UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTOPHER M. BERNARD, | CASE NO. C25-2037JLR |
| Plaintiff, | ORDER |
| v. | |
| AMAZON.COM, INC., et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court are (1) Defendants Amazon.com, Inc. and Amazon Logistics, Inc.'s ("Amazon Logistics," and together with Amazon.com, Inc., "Amazon") motion to compel arbitration and stay litigation (MTC (Dkt. # 20); MTC Reply (Dkt. # 32)) and (2) Plaintiff Christopher M. Bernard's motion for leave to amend his complaint (MTA (Dkt. # 33); MTA Reply (Dkt. # 36); *see* Prop. Am. Compl. (Dkt. # 33-1); Redlined Prop. Am. Compl. (Dkt. # 33-2)).  Each party opposes the other party's motion.  (MTC Resp. (Dkt. # 29); MTA Resp. (Dkt. # 34).)  The court has considered the parties' submissions,

ORDER - 1

the relevant portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS Amazon's motion to compel arbitration, STAYS this action pending the completion of arbitration, and DENIES Mr. Bernard's motion for leave to amend.

## II.  BACKGROUND

### A.  Factual Background

This matter arises from Mr. Bernard's participation in Amazon's Delivery Service Partner ("DSP") program, through which local delivery businesses contract with Amazon Logistics to transport and deliver Amazon goods to customers in a specific delivery area. (Compl. (Dkt. # 1) ¶¶ 1-2, 11; McCabe Decl. (Dkt. # 21) ¶¶ 4-5.)  Mr. Bernard, "an experienced operations executive[,]" started his DSP business, Last Mile National City, LLC ("LAMI") in California in July 2019.  (Compl. ¶ 13; McCabe Decl. ¶¶ 3, 6.)

To join the DSP program, a prospective DSP owner must first form a business entity.  (Bernard Decl. (Dkt. # 30) ¶ 4); *see also Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1192 (9th Cir. 2024) (describing the process for joining the DSP program).  The business entity must then execute Amazon Logistics' standard DSP Program Agreement ("DSP Agreement") using a process in which Amazon displays the DSP Agreement on its online portal and the DSP approves it by clicking an "Accept" button.  (McCabe Decl. ¶ 5; Bernard Decl. ¶ 8.)

---

[1] Mr. Bernard requests oral argument on the motion to compel arbitration.  Neither party requests oral argument on the motion for leave to amend.  The court concludes that oral argument would not assist it in resolving the motions and denies Mr. Bernard's request for argument.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

Mr. Bernard executed the DSP Agreement on behalf of LAMI on on July 24, 2019.  (McCabe Decl. ¶¶ 6-7; Bernard Decl. ¶¶ 8, 12.)  The DSP Agreement includes an arbitration provision that provides, in relevant part:

> Governing Law; Submission to Arbitration.  This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington state law, without reference to any applicable conflict of laws rules.  ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT . . . .  The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules.  The AAA's rules are available at www.adr.org or by calling 1-800-778-7879.  Payment of all filing, administration, and arbitrator fees will be governed by the AAA's rules.

(McCabe Decl. ¶ 8, Ex. A ("DSP Agreement") § 13.)  The same arbitration provision was in effect throughout Mr. Bernard's participation in the DSP program.  (*Compare id.*; *with id.* ¶ 8, Ex. B (January 1, 2025 version of the DSP Agreement) § 13.)

Over the next six years, Mr. Bernard grew LAMI's fleet to 50 delivery vans, employed over 100 people, and generated profits of approximately $1.5 million per year.  (Compl. ¶ 13; *see also* Bernard Decl. ¶ 7.)  Mr. Bernard alleges, however, that in early 2024, "Amazon unilaterally implemented 'profit compression' measures across the DSP program" such as "adjusting route assignments, delivery rates, and reimbursement formulas" for the purpose of "artificially cap[ping] DSP earnings."  (Compl. ¶ 14.)  According to Mr. Bernard, these measures reduced his annual profit to approximately $650,000 per year.  (*Id.*)

Mr. Bernard tried to sell his DSP business in 2024 and 2025.  (*Id.* ¶ 15.)  He alleges that he identified "seven qualified, cash-ready buyers willing to pay up to

ORDER - 3

"$1.2 million for the business" who "came from Amazon's own DSP candidate pool[.]" (*Id.*)  The DSP Agreement required Mr. Bernard to obtain Amazon's consent before he could assign the DSP Agreement to a buyer.  (*Id.*)  Amazon, however, "systematically rejected" each potential buyer, which "effectively block[ed] Mr. Bernard from ever monetizing the business he had built."  (*Id.*)

In May 2025, the last of Mr. Bernard's seven potential buyers survived Amazon's vetting and reached the final interview stage.  (*Id.* ¶ 16.)  Just four days before the completion of the sale, however, Amazon "abruptly terminated" Mr. Bernard's DSP Agreement.  (*Id.*)  Mr. Bernard alleges that Amazon's termination of his DSP Agreement "extinguished [his] business overnight, denying him the $1.2 million sale proceeds and destroying the enterprise value he had created."  (*Id.*)  Mr. Bernard alleges that his experience "is not an isolated incident but part of a pattern of racketeering activity and unlawful conduct by Amazon affecting hundreds of DSPs nationwide."  (*Id.* ¶ 18.)

**B.      Procedural Background**

Mr. Bernard filed this action on October 20, 2025.  (*See* Compl.)  He raises nine causes of action against Amazon on behalf of himself individually, LAMI, and a proposed class of similarly situated DSP owners:  (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), (d); (2) violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2; (3) fraudulent franchise in violation of state and federal franchise laws; (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (5) breach of the implied covenant of good faith and fair dealing; (6) intentional interference with

ORDER - 4

prospective economic advantage; (7) fraud and fraudulent concealment; (8) declaratory judgment under 28 U.S.C. § 2201; and (9) violation of the Washington Consumer Protection Act ("WCPA"), ch. 19.86 RCW.  (Compl. ¶¶ 20-40.)  Mr. Bernard also includes in his complaint anticipatory allegations addressing Amazon's claimed right to compel his case to individual arbitration.  (*Id.* ¶¶ 41-42.)  Specifically, he asks the court (1) for an order determining that his claims for public injunctive relief under the UCL and WCPA are not subject to arbitration, and (2) to decide whether the DSP Agreement's arbitration clause is enforceable rather than leave that question to an arbitrator.  (*Id.*)  Mr. Bernard seeks "damages and public injunctive relief to stop Amazon's unlawful DSP practices and to restore fair, transparent conditions across the DSP network."  (*Id.* ¶ 4; *see also id.* at 22-23 (prayer for relief).)

On December 19, 2025, the court granted the parties' stipulated motion to stay initial case deadlines pending its ruling on Amazon's anticipated motion to compel arbitration.  (12/19/25 Order (Dkt. # 19).)  Amazon filed its motion to compel arbitration on January 26, 2026.  (*See* MTC.)  On February 22, 2026, Mr. Bernard responded to Amazon's motion.  (*See* MTC Resp.)  After several extensions to the briefing schedule, the motion to compel was fully briefed on March 9, 2026.  (*See generally* Dkt.)

Mr. Bernard moved for leave to amend his complaint on March 20, 2026.  (*See* MTA.)  That motion, too, is now fully briefed and ripe for decision.

//

//

//

ORDER - 5

## III.   ANALYSIS

Below, the court first addresses Amazon's motion to compel arbitration based on the allegations in the operative complaint.  Then, the court considers Mr. Bernard's motion to file a first amended complaint.

**A.   Motion to Compel Arbitration**

1.   Standard of Review

The FAA governs arbitration agreements in any contract affecting interstate commerce.  *See Cir. City Stores*, *Inc. v. Adams*, 532 U.S. 105, 119 (2001).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract[,]" such as fraud, duress, or unconscionability.  9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  Arbitration agreements may not, however, be invalidated by defenses that apply only in arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.  *Concepcion*, 563 U.S. at 339.

A district court's authority to compel arbitration arises under § 4 of the FAA. 9 U.S.C. § 4.  In general, "[t]he FAA limits federal court review of arbitration agreements to two gateway arbitrability issues: '(1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue.'"  *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).  The parties may, however, delegate the resolution of these gateway issues to the arbitrator.  *Fli-Lo Falcon*, 97 F.4th at 1199 (explaining that delegable threshold issues may include "whether the parties have

ORDER - 6

agreed to arbitrate," "whether [the arbitration] agreement covers a particular controversy," and "whether the [arbitration] [a]greement is unconscionable") (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)). If "the parties have 'clearly and unmistakably' delegated questions regarding arbitrability to the arbitrator, the court need not conduct further inquiries beyond the existence of the arbitration agreement." *Id.* at 1194 (first citing *Rent-A-Ctr.*, 561 U.S. at 68-70; and then citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). Incorporation of the AAA Commercial Arbitration Rules (the "AAA Rules") in an arbitration agreement "constitutes clear and unmistakable evidence that [the] contracting parties agreed to arbitrate arbitrability." *Id.* at 1199 (quoting *Brennan*, 796 F.3d at 1130). Thus, if an arbitration agreement incorporates the AAA Rules, "the only remaining question [for the district court] is whether the particular agreement to delegate arbitrability—the [d]elegation [p]rovision— is itself unconscionable." *Id*. (quoting *Brennan*, 796 F.3d at 1132). "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (stating that the FAA "leaves no place for the exercise of discretion by a district court").

> 2. The Court Grants the Motion to Compel Arbitration

Amazon asserts that the court must compel arbitration because the Ninth Circuit held, in *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, that the same arbitration provision that is at issue here delegates to the arbitrator exclusive authority to resolve questions of

ORDER - 7

arbitrability.[2]  (MTC at 5-7; DSP Agreement § 13 (incorporating the AAA Rules)); *see Fli-Lo Falcon*, 97 F.4th at 1201 (affirming the district court's order compelling arbitration of a proposed class action filed by three DSPs against Amazon).  Mr. Bernard does not dispute that the arbitration provision applies to LAMI.  (*See generally* Resp.)  He argues, however, that *Fli-Lo Falcon* does not require him to arbitrate his individual claims because (1) only LAMI and Amazon Logistics are bound by the DSP Agreement's arbitration provision; (2) his individual claims fall outside the scope of the arbitration provision; (3) the delegation clause is procedurally and substantively unconscionable; (4) he is exempt from the FAA because he is a "worker[] engaged in foreign or interstate commerce" under FAA § 1; (5) the arbitration provision is procedurally and substantively unconscionable; (6) his UCL and WCPA claims "seek public injunctive relief that cannot be waived or arbitrated[;]" and (7) the public interest weighs against compelling arbitration.  (*See generally id.*)

As discussed below, the court grants Amazon's motion to compel arbitration and stay proceedings because (1) Mr. Bernard is bound by the DSP Agreement's arbitration provision, (2) FAA § 1 does not exempt Mr. Bernard from arbitration, and (3) the delegation clause is not unconscionable.  As a result, Mr. Bernard's remaining arbitrability arguments must be decided by the arbitrator, rather than by this court.

//

//

---

[2] Like this case, *Fli-Lo Falcon* involved the 2018 version of the DSP Agreement.  *See* 97 F.4th at 1192 n.2; (DSP Agreement at 1).

ORDER - 8

*a.*     *Mr. Bernard is Bound by the DSP Agreement*

Courts apply general contract and agency principles when determining whether an arbitration agreement may be enforced against a nonsignatory to a contract. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006). "Among these principles are [1] incorporation by reference; [2] assumption; [3] agency; [4] veil-piercing/alter ego; and [5] estoppel." *Id.* (citation and quotation marks omitted). Mr. Bernard asserts that none of these doctrines apply here. (MTC Resp. at 14-15.) Specifically, he argues that he is not personally bound by the DSP Agreement's arbitration provision because that agreement is a contract between Amazon Logistics and LAMI, rather than a contract between Amazon Logistics and himself as an individual. (MTC Resp. at 12-13; *see also id.* at 13 (asserting that Mr. Bernard signed the DSP Agreement only "as owner and authorized agent of LAMI" rather than in his individual capacity).) Amazon counters that agency, equitable estoppel, and third-party beneficiary principles bind Mr. Bernard to the DSP Agreement. (MTC Reply at 4-7.) The court agrees with Amazon that Mr. Bernard is bound to the DSP Agreement under the principle of equitable estoppel.

In Washington, a nonsignatory to an arbitration agreement may be compelled to arbitrate if he claims "the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Townsend v. Quadrant Corp.*, 268 P.3d 917, 922 (Wash. 2012) (quoting *Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045-46 (9th Cir. 2009)) (internal quotation marks omitted). "[E]quitable estoppel may require a nonsignatory to arbitrate a claim if that person, despite never having signed the agreement, 'knowingly exploits' the contract in which the arbitration agreement is

ORDER - 9

contained." *Id.* (quoting *Mundi*, 555 F.3d at 1046); *see, e.g.*, *Randall v. FedEx Ground Package Sys., Inc.*, No. 2:23-CV-0095-TOR, 2023 WL 4632380, at *4-5 (E.D. Wash. July 19, 2023) (holding that equitable estoppel applied to a delivery company owner's individual discrimination and emotional distress claims because they had an "obvious and close nexus" to the delivery services contract between FedEx and the delivery company).

Mr. Bernard argues that equitable estoppel does not bind him to the DSP Agreement because his individual claims "do not seek to enforce the DSP Agreement or depend on its terms." (Resp. at 14.) Instead, according to Mr. Bernard, his injuries "would exist even if the DSP Agreement were void." (*Id.*) The court, however, has no trouble concluding that Mr. Bernard is bound to the arbitration provision because he "knowingly exploited" the benefits of the DSP Agreement. *Townsend*, 268 P.3d at 922. Mr. Bernard earned millions of dollars in profits during the six years he operated LAMI (Bernard Decl. ¶¶ 3, 16), and all of his claims arise out of or relate to Amazon's alleged misrepresentations about and operation of the DSP program, its alleged "profit compression" activities, its refusal to approve his chosen buyer, and its eventual termination of his DSP Agreement (*see* Compl. ¶¶ 20-40). Mr. Bernard cannot, therefore, avoid the burdens of the DSP Agreement, including its agreement to arbitrate.

Furthermore, none of the cases Mr. Bernard cites to support his argument are on point. First, *Mundi v. Union Security Life Insurance Company*, 555 F.3d at 1047-48, and *Kramer v. Toyota Motor Corporation*, 705 F.3d 1122, 1128 (9th Cir. 2013), both involved nonsignatory *defendants* that sought to compel signatory *plaintiffs* to arbitration. This case, in contrast, involves a signatory *defendant* that seeks to enforce an arbitration

provision against a nonsignatory *plaintiff*.  (*See generally* MTC.)  *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), meanwhile, does not address equitable estoppel at all.  Instead, the *Jackson* court (1) determined that it could decide whether the plaintiffs' claims were arbitrable because the applicable arbitration agreement did not include a delegation clause and (2) held that the plaintiffs' claims were not subject to arbitration because anyone in the Facebook group at issue in the case could have brought the same privacy and wiretapping claims against Amazon even if they weren't Amazon employees.  *Id.* at 1101-03.

Accordingly, the court concludes that equitable estoppel binds Mr. Bernard to the DSP Agreement's arbitration provision.  As a result, the court need not, and does not, consider the other nonsignatory doctrines.

> b.     *Mr. Bernard and LAMI Are Not Exempt under FAA § 1*

Section 1 of the FAA provides that "'nothing' in the Act 'shall apply' to 'contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.'"  *New Prime Inc. v. Oliveira*, 586 U.S. 105, 110 (2019) (quoting 9 U.S.C. § 1).  Thus, "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration."  *Id.* at 111.  "As the party opposing arbitration, [Mr. Bernard] bears the burden of establishing that the [§ 1] exemption applies."  *Fli-Lo Falcon*, 97 F.4th at 1194.

In *Fli-Lo Falcon*, the Ninth Circuit made clear that business-to-business contracts like the DSP Agreement do not qualify as "contracts of employment" within the meaning of § 1 because they call for the performance of services by the DSP as a business rather

than the performance of services by an employee. *Fli-Lo Falcon*, 97 F.4th at 1196-98; *see also id.* at 1196-97 ("[F]or a contract to *be* a contract of employment covered by § 1, it must have a *qualifying worker* as one of the parties.") (emphasis in original). As a result, the § 1 exemption does not apply to "a commercial contract between two business entities." *Id.* at 1201 (compiling cases); *see Ervin v. Amazon.com Servs., LLC*, No. 24-cv-10311-ODW (KSX), 2025 WL 1591967, at *4-5 (C.D. Cal. June 5, 2025) (concluding that the § 1 exemption did not apply to a DSP owner because the DSP Agreement "is a commercial contract and not a 'contract of employment . . . for the performance of *work* by *workers*'") (quoting *Fli-Lo Falcon*, 97 F.4th at 1197) (emphasis in *Fli-Lo Falcon*); *Amos v. Amazon Logistics, Inc.*, 74 F.4th 591, 593 (4th Cir. 2023) (holding that the § 1 exemption did not apply to a DSP owner because the DSP Agreement is a "binding commercial contract" for "a business services deal struck between two corporate entities, not a 'contract of employment'").[3]

This case involves the same DSP Agreement that the Ninth Circuit considered in *Fli-Lo Falcon*, and Mr. Bernard has not provided the court any reason to depart from the Ninth Circuit's holding in that case. (*See* MTC Resp. at 18-21.) Mr. Bernard asserts that § 1's exemption applies to him because he is "suing in his individual capacity as a natural

---

[3] Mr. Bernard asserts that *Ervin* and *Amos* involved "entity plaintiffs" and did not address whether the owner of the DSP was personally bound by the arbitration agreement. (MTC Resp. at 21.) As Amazon points out, however, Mr. Bernard is mistaken. (*See* MTC Reply at 4-5.) Both courts held that the DSP owners' individual claims were subject to arbitration. *See Ervin*, 2025 WL 1591967, at *3 ("Ervin brings this action against Amazon in his individual capacity and not on behalf of [his DSP]."); *Amos*, 74 F.4th at 597 (holding that the claims pursued by the DSP and by the DSP owner in his individual capacity must be submitted to arbitration).

person[.]" (MTC Resp. at 19.) *Fli-Lo Falcon*, however, makes clear that whether an agreement is a "contract of employment" that gives rise to the § 1 exemption does not turn on the nature of the plaintiff but on the nature of the agreement. *Fli-Lo Falcon*, 97 F.4th at 1201; *see also Negrete v. Campbell's Co.*, No. 2:25-CV-00555-AB-AGR, 2025 WL 4358880, at *4 (C.D. Cal. Aug. 8, 2025) (holding that § 1 did not apply because the agreement at issue "unambiguously highlight[ed] that the parties to the contract are business entities, regardless of whether a natural individual or the business entity is a party to this lawsuit"). Therefore, the court concludes that § 1 of the FAA does not exempt Mr. Bernard from arbitration.

> ### c.      The Delegation Provision is not Unconscionable

"[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski*, 87 F.4th at 1008. Here, Mr. Bernard asserts that the delegation clause is unconscionable and thus unenforceable as to his individual claims. (MTC Resp. at 17.)

First, Mr. Bernard avers that the delegation clause is procedurally unconscionable because it was "never separately called to [his] attention" and "exists only by incorporation-by-reference to an external document—the AAA Commercial Rules—that [Mr.] Bernard was never provided and never reviewed." (*Id.* at 17-18.) As a result, according to Mr. Bernard, he had no meaningful opportunity to understand that by clicking "Accept" on the DSP Agreement, he was agreeing that an arbitrator, rather than a court, would decide whether his individual claims must be arbitrated. (*Id.* at 18.) Procedural unconscionability relates to the formation of a contract, and implicates the

ORDER - 13

manner in which the contract was entered, whether the plaintiff had a reasonable opportunity to understand the contract, whether the contract terms are understandable, and whether the terms were "hidden in a maze of fine print[.]" *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 495 (Wash. 2020) (citation omitted).  In *Burnett v. Pagliacci Pizza*, for example, the Washington Supreme Court found an agreement to arbitrate unconscionable when it appeared in a second document that the delivery driver plaintiff "had no knowledge or notice" of when he signed his employment agreement.  *Id.* at 496. Here, by contrast, Mr. Bernard is an experienced executive; the DSP Agreement refers by name to the AAA Rules; and the Ninth Circuit has made clear that incorporation of the AAA Rules in an arbitration provision constitutes clear and unmistakable evidence of the intent to delegate questions of arbitrability.  (*See* Compl. ¶ 13; DSP Agreement § 13); *see Brennan*, 796 F.3d at 1130.  The court concludes, therefore, that Mr. Bernard has not shown that the delegation clause is procedurally unconscionable.

Second, Mr. Bernard argues that the delegation clause is substantively unconscionable because it "creat[es] . . .  a closed-loop adjudicatory system designed to insulate Amazon from accountability for a pattern of racketeering conduct affecting hundreds of DSPs[.]"  (MTC Resp. at 21; *see also id.* at 18 (arguing that the delegation provision "is substantively unconscionable because it creates a self-referential mechanism that insulates Amazon's chosen forum from judicial review").)  "Substantive unconscionability exists when a provision in the contract is one-sided."  *Burnett*, 470 P.3d at 496 (citation omitted).  When determining whether a contractual provision is "one-sided or overly harsh," Washington courts consider "whether the provision is

shocking to the conscience, monstrously harsh, and exceedingly calloused." *Id.* (citations omitted). In *Burnett*, for example, the court concluded that an arbitration provision was substantively unconscionable because it (1) completely barred wage-and-hour claims by terminated employees; (2) shortened the statute of limitations for making wage-and-hour claims; and (3) provided no alternative to submitting a complaint to the employee's supervisor, even when the supervisor was the person subjecting the employee to unfair treatment. *Id.* Because Mr. Bernard identifes nothing in the DSP Agreement's delegation clause that is similarly harsh or callous, the court concludes that Mr. Bernard has not shown that the delegation clause is substantively unconscionable.

Finally, Mr. Bernard also argues that, as a matter of public interest, the court "should decline to extend arbitration doctrine to compel an individual who never signed into a private forum designed to suppress public accountability for alleged racketeering." (MTC Resp. at 28.) The FAA, however, "leaves no place for the exercise of discretion by a district court, but instead mandates that [the court] *shall* direct the parties to proceed to arbitration" if it determines that the delegation clause is enforceable. *Fli-Lo Falcon*, 97 F.4th at 1193-94 (quoting *Dean Witter Reynolds*, 470 U.S. at 218). The court cannot depart from Ninth Circuit and Supreme Court precedent defining the scope of a district court's review of arbitrability questions. Therefore, the court must deny Mr. Bernard's request to invalidate the delegation clause as unconscionable or contrary to the public interest.

Because the delegation clause is valid and enforceable, the court cannot consider Mr. Bernard's remaining arguments that challenge the scope and enforceability of the

DSP Agreement's arbitration provision. *See Henry Schein*, 586 U.S. at 68 (holding that where the parties to an arbitration agreement delegate questions of arbitrability to an arbitrator, "a court may not override the contract . . . [and] possesses no power to decide the arbitrability issue"). Specifically, the court may not consider whether the arbitration provision or the class action waiver included in it are unconscionable, whether Mr. Bernard's claims fall outside the scope of the arbitration provision, or whether Mr. Bernard's claims for public injunctive relief under the UCL and WCPA are exempt from arbitration. Instead, Mr. Bernard must raise these issues before the arbitrator. *See Fli-Lo Falcon*, 97 F.4th at 1201 ("[P]laintiffs' remaining unconscionability challenges to the [a]rbitration [a]greement fall within the scope of the enforceable [d]elegation [p]rovision, and we leave them to the arbitrator in the first instance."); *Reynolds v. Safeway, Inc.*, No. C22-0197TL, 2023 WL 2560853, at *4 (W.D. Wash. Mar. 17, 2023) (concluding that the parties had delegated to the arbitrator the question of whether the plaintiff's claim for public injunctive relief under the WCPA was excluded from arbitration). Accordingly, the court grants Amazon's motion to compel arbitration.

**B.      Motion for Leave to Amend**

Having granted Amazon's motion to compel arbitration, the court denies Mr. Bernard's later-filed motion for leave to file a first amended complaint as moot. Even if the motion were not moot, however, the court would nevertheless deny it. Mr. Bernard insists that his proposed first amended complaint is "a clarifying amendment" that "does not add new parties, new substantive claims, or new material factual allegations." (MTA at 1.) Instead, according to Mr. Bernard, the proposed amendments "reorganize[] the

ORDER - 16

existing causes of action" and "clarif[y] which claims are asserted by [Mr.] Bernard in his individual capacity and which are asserted by [LAMI]." (*Id.* at 1-2; *see generally* Redlined Prop. Am. Compl. (identifying the proposed changes).)  Mr. Bernard argues that these clarifications are "intended to ensure that the [c]ourt evaluates arbitrability based on a clear and accurate operative pleading." (MTA at 2.)

A district court ordinarily considers five factors when determining whether to grant leave to amend:  undue delay, bad faith, repeated failure to cure deficiencies, prejudice to the opposing party, and futility of amendment.  *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).  A court may, however, deny leave to amend "where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (citation omitted). Here, nothing about Mr. Bernard's proposed amendments would change the court's conclusions regarding whether Mr. Bernard is bound by the DSP Agreement, whether FAA § 1 exempts Mr. Bernard's individual claims from arbitration, or whether the delegation clause is enforceable. (*See generally* Redlined Prop. Am. Compl.)  Therefore, even if the motion to amend were not moot, the court would still deny it.  Mr. Bernard must file his motion to amend his complaint in arbitration.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Amazon's motion to compel arbitration and to stay proceedings (Dkt. # 20) and DENIES Mr. Bernard's motion for leave to amend his complaint (Dkt. # 33).  The court COMPELS this matter to arbitration

and STAYS this action pending the completion of arbitration. The parties are ORDERED to file a joint report regarding the status of the arbitration proceedings no later than six months from the filing date of this order and every six months thereafter until the arbitration is complete. The parties are further ORDERED to file a joint report no later than fourteen days after the arbitration proceedings end.

      Dated this 10th day of June, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 18